**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA,**

**vs.**                                                    **Case No. 4:89cr4006-WS**

**KENNETH GASTON,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Defendant submitted a pleading titled:

**Verified Notice of
Acceptance for Value, Consideration and Honor
Return for Value and Performance
Requests for Full Post Settlement and Closure
Or Alternative Remedy
by Special Visitation**

Doc. 761.  He also filed two "Affidavit[s] of Mailing" with various attachments.  Docs. 762
and 763.

Defendant names himself as "'Kenneth Bernard; Gaston (c) 1979, All Rights
Reserved,' Secured Party," and names as Respondents the former United States
Attorney for this District, Michael Patterson, and Assistant United States Attorney

Michael Simpson.  Doc. 761, p. 1.  Defendant submits, *inter alia*, his Uniform Commercial Code (UCC) Financing Statement, Public Notice, an affidavit, his Notice Declaration & Certificate of Sovereign Status, Formal Sovereign Oath of Renunciation, Copyright Notice, and Power of Attorney in Fact.  Doc. 761, Ex. A (composite).

Defendant signs:

> I Am.
>
> Kenneth Bernard; Gaston (c) 1979, All Rights Reserved, the living, breathing, sentient Gensman known by the appellation "Kenneth Bernard; Gaston (c) 1979, All Rights Reserved," Secured Party, Third Party Intervener and Authorized Representative.

Doc. 761, p. 9; doc. 762, p. 3; doc. 763, p. 2.

Defendant asserts that the failure to return the cancellation of debt (COD) will be taken as a dishonor, and a certificate of non-response or dishonor may be issued and used as evidence.  Doc. 761, p. 3.  Defendant claims that in the event of dishonor, Respondents thereby agree to a number of things, including Defendant's release by the court.  *Id.*, pp. 3-7.  Defendant claims he received a certificate of non-response or dishonor.  Doc. 762, attachment.  Defendant submits a proposed order releasing him, and an alternative proposed order directing the Government to show cause why it should not be held in contempt and a tort claim should not issue.  Doc. 763, attachments.

The court is unable to find a dictionary definition of the word "gensman;" Petitioner presumably means gens man:

> **gens** (jenz), n. [Latin] *Roman Law*.  A clan or group of families who share the same name and (supposedly) a common ancestor; extended family. Members of a *gens* are freeborn and possess full civic rights.

Black's Law Dictionary (8th ed. 2004).  A Westlaw search of all state and federal cases

uncovered only one use of Gens man or Gensman as a word (rather than a name), in

an unpublished case out of the Eastern District of Pennsylvania.  United States v.

Ramos, Unpublished, 2004 WL 356412 (E.D. Pa. 2004).[1]  Some of the language used

by the pro se defendant there is remarkably similar to language used in this case.  He

submitted an "Affidavit of the Living Breathing Gensman by Special Visitation," asserting

lack of jurisdiction because he was not a United States citizen but lived in "his own

skin;" made claims under the Uniform Commercial Code and other commercial statutes

and requested surety; filed "notices" of "dishonor;" and many claims "were purportedly

written by Defendant as an appointed representative for an entity named Mario G.

Ramos © 1982, a distinction also alleged to have legal significance."  At pp. *1-2 and n.

5.  The court found "nothing in this case involves or is governed by the provisions of the

Uniform Commercial Code or any other commercial statute or agreement, that surety is

not required in a federal criminal case, and that the remainder of Defendant's

allegations are equally meritless."  Id., at *2.

        The UCC is inapplicable to criminal proceedings.  United States v. Humphrey,

287 F.3d 422, 435 (6th Cir. 2002); overruled on other grounds, United States v.

Leachman, 309 F.3d 377 (6th Cir. 2002).  See also United States v. Partida-Parra, 859

F.2d 629, 634 (9th Cir. 1998) ("formation of binding plea agreements is governed not by

the Uniform Commercial Code, but by the Federal Rules of Criminal Procedure . . . .);

Van Hazel v. Luoma, 2005 WL 2837356, slip opinion at *2 (E.D. Mich. October 27,

---

[1] A copy of this and another unpublished case cited ahead will be attached to the
paper copy of this recommendation mailed to Defendant.

2005) ("Petitioner cannot divest the State of Michigan of jurisdiction to prosecute him of a criminal offense simply by declaring a security interest in himself pursuant to the Uniform Commercial Code or having another person do so.") (collecting cases); United States v. Ramirez, 291 F.Supp.2d 266, 268 (S.D. NY 2003).

In Ramirez, a prisoner filed UCC liens against the federal judge who presided over his criminal trial and the Assistant United States Attorney who prosecuted the case.  291 F.Supp.2d at 267-268.  The Government sought declaratory judgment and injunctive relief voiding the liens and enjoining future attempts to create liens against the judge or prosecutor.  Id., at 268.  "While the filing of a Financing Statement perfects a security interest, a Financing Statement alone cannot create a valid security interest."  Id. (citations omitted).  Mr. Ramirez claimed a security interest derived from an agreement, "which allegedly is 'self-executing' in that any party who uses his name – in which he alleges to hold a common law copyright – 'consents' to become a debtor to Ramirez under the draconian terms of the agreement."  Id.  He claimed this was violated by the judge and prosecutor when they used his name during the criminal proceeding.  Id.  The court found "[t]his agreement lacks all of the basic necessities of a valid contract, such as mutual consent and bargained for consideration," Id.  Further, "the system of common law copyright was substantially preempted by the Copyright Act of 1976.  Moreover, a name is not a proper subject for copyright."  Id. (citations and footnote omitted).  The liens were found "entirely without merit and were filed with the intent to interfere with the enforcement of the criminal laws of the United States."  Id.

To the extent Defendant could be "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the

United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack," his remedy is under the plain language of 28 U.S.C. § 2255. Defendant was previously denied § 2255 relief and his remedy, if any, is by filing a second or successive § 2255 motion with authorization from the court of appeals.  Doc. 745, pp. 2-3 (report and recommendation, incorporated herein by reference, as adopted by the court in doc. 748).[2]

Defendant's claims are not at all clear, but to the extent they could be construed as seeking some kind of damages or injunctive relief against the individuals involved in his criminal case, Defendant is in custody and a civil suit which necessarily implies the invalidity of his confinement is not cognizable unless and until relief from the conviction is granted.  See Nelson v. Campbell, 541 U.S. 637, 646-647, 124 S.Ct. 2117, 2124, 158 L.Ed.2d 924 (2004) (discussing the "favorable termination" requirement of Heck v. Humphrey, 512 U.S. 477 and its progeny) (other citations omitted); Abella v. Rubino, 63 F.3d 1063, 1065-66 (11th Cir. 1995) (applying Heck rationale to civil rights claim brought by federal inmate who had not obtained § 2255 relief).

Further, this court should not construe these filings as seeking anything other than relief in the criminal case, given Defendant's failure to file an in forma pauperis application or pay the $ 250.00 filing fee.  See 28 U.S.C. § 1914(a) (the fee for instituting any civil action or proceeding is $250.00, except that the fee for filing an

---

[2] The recommendation, addressing Defendant's motion to correct illegal sentence purportedly pursuant to former Fed.R.Civ.P. 35, also noted that the Eleventh Circuit had denied Defendant's application for authorization to file a second or successive motion. Doc. 745, p. 2, referencing doc. 737.

application for writ of habeas corpus is $5.00).  Should Defendant wish to file suit and

proceed in forma pauperis, he would be subject to the Prison Litigation Reform Act

(PLRA).  Under the PLRA, even if leave to proceed in forma pauperis is granted the

court may still access a partial filing fee, and Defendant would be required to pay back

the entire fee of $250.00 in monthly installments.  28 U.S.C. § 1915(b)(1), (2).  The

court would also have the authority to dismiss the case if it found the allegation of

poverty untrue, that the action was frivolous or malicious, or failed to state a claim upon

which relief may be granted, or sought monetary relief against a defendant with

immunity.  28 U.S.C. § 1915(e)(2).  Following three such dismissals or "strikes," a

prisoner is precluded from proceeding in forma pauperis absent allegations of "imminent

danger of serious physical injury."  28 U.S.C. § 1915(g).

       For the foregoing reasons, it is clear that Defendant is not entitled to any relief in

his criminal case.  It is therefore respectfully **RECOMMENDED** that the various notices

(docs. 761-763) be **SUMMARILY DISMISSED**.

       **IN CHAMBERS** at Tallahassee, Florida, on March 3, 2006.


        S/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**